R. & H. CARTAGE CO., APPELLANT, *v.* FOUGHT, APPELLEE.

(No. 5280—Decided April 11, 1960.)

*Mr. William E. Longthorne,* for appellant.
*Messrs. Cline, Bischoff & Cook* and *Mr. Ronald Dings,* for appellee.

FESS, J. This is an appeal on questions of law from a judgment dismissing plaintiff's petition after sustaining a demurrer thereto on the ground that the cause of action was not brought within two years, as prescribed by Section 2305.10, Revised Code.

In the amended petition, plaintiff alleges that it is engaged in the business of operating agent for trucking and carrying companies in the states of Ohio and Michigan and that on or about May 4, 1954, it entered into an operating agreement with Mid-America Highway Express, Inc. (hereinafter referred to as Mid-America), wherein plaintiff as agent was authorized to conduct the operations which the latter was authorized to conduct under its I. C. C. permit. Plaintiff alleges further that on May 22, 1954, the defendant entered into an equipment-leasing agreement with Mid-America and that a 1954 Mack tractor and Dorsey semi-trailer were leased to the defendant by Mid-America. A copy of that contract is attached to the petition, from which it appears that the equipment was leased by the defendant to Mid-America, but such agreement is not made a part of the petition, and its provisions therefore may not be considered by this court in determining whether the petition states a cause of action.

Plaintiff alleges further that on June 11, 1954, defendant undertook, in accordance with the leasing agreement, to haul a shipment of carcass calves to the A. & P. Tea Company in New York; that, because of improper refrigeration and negligent delay in the delivery of such shipment, it was rejected by the consignee and was thereafter sold for the sum of $6,527.17, which represented the reasonable market value of the shipment in such condition; and that the damage, spoilage, loss of market value and refusal of consignee to accept delivery of the shipment were caused solely and proximately by defendant's negligence in failing to make the delivery within a reasonable time as aforesaid and in failing to observe Mid-America's instructions.

Plaintiff alleges further that the shipper presented a claim to Mid-America for loss in the sum of $3,203.97, and ''that defendant refused to become responsible for said claim and that thereafter the plaintiff, acting in accordance with paragraph 6 of its operating agreement with Mid-America Highway Express, Inc., to pay such claims for its principal, and acting in the belief that Mid-America Highway Express, Inc., was legally responsible for the claim,'' did settle such claim by the payment of $3,000 to the shipper.

Plaintiff alleges further that the equipment lease agreement (between Mid-America and defendant) provides in paragraph 11 thereof that the "lessor also hereby agrees that he will be responsible for any such claim for damages, spoilage, loss of market value or refusal of consignee to accept delivery of a shipment arising out of lessor's negligence in making delivery within reasonable time or because of failure to observe lessee's instructions, rules and regulations requiring lessor to notify lessee immediately in the event of a breakdown or other delay beyond lessor's control which results in a delay of more than three hours"; that Mid-America has duly performed the provisions of the equipment lease agreement to be performed by it; but that defendant has breached the agreement in refusing to be responsible for the claim for damage, spoilage, loss in market value or refusal of consignee to accept delivery of the shipment, all to the damage of Mid-America in the amount of $3,000 plus interest at the rate of six per cent per annum from July 13, 1954.

Plaintiff alleges further that paragraph 6 of its agreement with Mid-America requires plaintiff to pay all loss and damage claims resulting from operations of Mid-America and that, by virtue of that payment, plaintiff has been subrogated to the rights of Mid-America and "said equipment lease agreement." Plaintiff prays judgment against the defendant in the sum of $3,000 plus interest from July 13, 1954.

It is the contention of the defendant that the action is one for injury to personal property required to be brought within two years after the cause thereof arose, under Section 2305.10, Revised Code, citing in support thereof *Andrianos* v. *Community Traction Co.*, 155 Ohio St., 47, 97 N. E. (2d), 549; *Farbach Chemical Co.* v. *Commercial Chemical Co.*, 101 Ohio App., 209, 136 N. E. (2d), 363; *Gillette* v. *Tucker*, 67 Ohio St., 106, 65 N. E., 865; and *Swankowski* v. *Diethelm*, 98 Ohio App., 271, 129 N. E. (2d), 182. However, in our opinion, the action is brought for damages for breach of a contract of indemnity, the cause of which would not arise until the refusal of the defendant to comply on demand under the terms of its contract with Mid-America. Therefore, the provisions of Section 2305.06, Revised Code, requiring the action to be brought within fifteen years after the cause thereof accrues, applies.

Although entertaining some doubt as to whether the petition states a cause of action on the part of the plaintiff against the defendant, it seems clear to us, upon the allegations, that Mid-America had a valid cause of action for breach of contract against the defendant under the terms of its contract with the defendant as alleged in the petition. Applying the rule of liberal construction in favor of the pleader, we conclude that plaintiff seeks to bring his cause of action as subrogee of Mid-America.

We recognize that there is a hiatus in the pleadings with respect to what actually occurred, giving rise to plaintiff's claim, including the date upon which plaintiff is alleged to have been subrogated to any claim which Mid-America might have had against the defendant or whether Mid-America's alleged claim against defendant was assigned to plaintiff. The petition likewise is somewhat unclear with respect to whether plaintiff might be claiming as a subrogee of the shipper, and also whether plaintiff may not have been a volunteer. Upon remand, the petition should be made definite and certain. Nevertheless, in applying the rule of liberal construction, we conclude that the petition states a valid cause of action, the judgment should be reversed and the cause remanded with directions to overrule the demurrer without prejudice to the defendant moving to strike or make the petition more definite and certain.

The judgment is reversed and the cause is remanded for further proceedings according to law.

*Judgment reversed.*

SMITH and DEEDS, JJ., concur.