**N & D, INC., et al., Appellants,**

v.

**HARROD, Sheriff, et al., Appellees.**

[Cite as *N & D, Inc. v. Harrod* (1991), 73 Ohio App.3d 299.]

Court of Appeals of Ohio,
Allen County.

No. 1–90–22.

Decided May 1, 1991.

*John M. Tudor,* for appellant.
*Matt C. Staley,* for appellee Charles Harrod.
*Richard E. Siferd,* for appellee Joe Guagenti.

HADLEY, Judge.

This is an appeal by plaintiff-appellant, N & D, Inc., et al. (hereinafter "N & D"), from a summary judgment granted by the Common Pleas Court of Allen County in favor of defendant-appellee, Charles W. Harrod, Sheriff of Allen County, and third-party defendant-appellee, Joe Guagenti. As the appeal involves issues of *res judicata* and statutes of limitations, it is important to first set forth the history of this case.

In 1982, Donna Pleasant, the owner of all shares of N & D, entered into an agreement for the sale and purchase of a bar and cafe from Guagenti known as the Wayside Inn Night Club, the personal property necessary to carry on business in the club, and the real estate upon which the club was located.

After problems occurred in the transfer of the liquor license to Pleasant and resulting financial dilemma, Guagenti caused an eviction notice to be served on Pleasant, on April 21, 1983. On May 2, 1983, Pleasant and Guagenti entered into a "Cancellation of Contract" which terminated the agreements and contracts between the parties for the above sale. On May 3, 1983, Guagenti caused execution to be issued to the Sheriff of Allen County to levy on certain property in the Wayside Inn which allegedly was owned by Jeannie Holiday, the mother of Pleasant. Subsequent to the eviction, the Wayside Inn was under the control of Guagenti. From the record, it does not appear that a return of execution was ever made by the sheriff as required by R.C. 2329.53.

On March 27, 1984, Pleasant and N & D brought an action against Guagenti and the Wayside Inn setting forth five counts which included conversion and unjust enrichment. Guagenti and the Wayside Inn filed an answer, counterclaim, and cross-claim against Jeannie Holiday.

Following the trial, on August 14, 1985, the trial court found in its entry of judgment and opinion that Guagenti and the Wayside Inn had converted an ice machine owned by N & D to their own use. However, as to the other property in question, the trial court, in its entry of judgment, found:

"that such of Plaintiffs' property taken by execution has not been converted in that there has been no disposition of the property under the Writ of Execution issued nor a determination that the levy was invalid. * * *"

This judgment was affirmed by this court in *Donna Pleasant v. Wayside Inn of Lima, Inc.* (Jan. 20, 1988), Allen App. No. 1–85–52, unreported, 1988 WL 6010.

On March 2, 1989, when the property under the 1983 writ of execution had not yet been sold or returned (plaintiffs had grown tired of waiting for the execution sale and desired the return of the bailed goods as having been improperly levied upon for the judgment obligation of another), Pleasant served notice on the sheriff to invoke the provisions of R.C. 2329.84. The property in question was subsequently tendered back to Pleasant through the sheriff on March 25, 1989. However, allegedly, the condition of the property had been greatly reduced (from $46,000 to $5,000) due to use by other judgment creditors. Reportedly, some of the property was missing while other property had been substituted with cheap replacements. As such, Pleasant refused to accept these goods.

Following the above incident, on April 28, 1989, N & D and Pleasant filed another complaint, which is the origin of the present appeal, this time against Charles W. Harrod, in his capacity as Sheriff of Allen County. In this complaint, it is alleged that the original writ of execution created a bailment

contract with the sheriff. As such, it is claimed that this contract was breached when the property was not returned unharmed.

In its memorandum decision and entry granting summary judgment, the trial court found that N & D was barred from recovery against the sheriff due to res judicata and due to the statute of limitations governing the action. It is from this decision which N & D and Pleasant appeal, making two assignments of error.

Assignment of Error No. 1:

"The court erred in granting summary judgment/motion to dismiss complaint on motion of defendant/third party defendant specifically upon its finding that (a) the issues and/or allegations raised by the complaint had already been litigated and thus were barred by the doctrine of *res judicata;* and (b) the claims of the complaint are barred by the passage of time under the provisions of the applicable limitation statutes."

Assignment of Error No. 2:

"The court erred in failing to recognize the claim as one sounding in bailment and in insisting instead that the claim sounded in conversion, wrongful execution and injury to personal property."

N & D claims that in its first action, breach of bailment was never raised, nor was Harrod, as sheriff, brought into the action. The initial complaint, filed in 1984, supposedly alleged conversion, wrongful execution, or injury to property. We do not have a copy of this complaint in the record provided by appellant, but will assume this to be the nature of the first action since this is an appeal from a summary judgment. The complaint filed in 1989 alleges solely a breach of a bailment contract, and is against the sheriff and not Guagenti or the Wayside Inn (although these latter two parties were brought into the suit as third-party defendants by the sheriff). Thus, it is claimed by N & D that *res judicata* cannot be applied to bar the present suit.

In *Norwood v. McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph two of the syllabus, it was held that:

"A judgment or decree in a former action does not bar a subsequent action where the causes of action are not the same, even though each action relates to the same subject matter."

Additionally, *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, at 195, 2 OBR 732, at 734, 443 N.E.2d 978, at 981, noted that:

"Case law in Ohio concerning the general doctrine of *res judicata* has long ago established the general principle that material facts or questions which were in issue in a former suit, and were there judicially determined by a court

of competent jurisdiction, are conclusively settled by a judgment therein so far as concerns the parties to that action and persons in privity with them."

Thus, before *res judicata* may apply, the parties or their privies must be the same and the issues tried in the original action must be the same.

In the record before us, we do not have a copy of the writ of execution served or a copy of the formal return of service. As such, we cannot determine whether the writ issued would impose the duties of a bailee upon the sheriff. If the writ issued did not require the sheriff to take possession of the property in question, such as a writ of delivery, then no implied bailment would arise as one of the conditions of bailment is possession of the property by the bailee. Additionally, there is no evidence in the record that the sheriff actually took possession of the property in question. Thus, the only evidence of any bailment contract is found in the appellant's brief. *Phung v. Waste Mgmt., Inc.* (1986), 23 Ohio St.3d 100, at 102, 23 OBR 260, at 261–262, 491 N.E.2d 1114, at 1116–1117, specifically held that "[a]n appellate court may not assume as true or even consider facts alleged in a party's brief or attachments thereto." Absent such evidence in the record, "this court has no alternative but to indulge the presumption of the regularity of the proceedings and the validity of the judgment in the trial court." *Ostrander v. Parker–Fallis Insulation Co.* (1972), 29 Ohio St.2d 72, 74, 58 O.O.2d 117, 119, 278 N.E.2d 363, 365. This presumption would include the ruling dealing with *res judicata.*

The next issue presented is whether the action is barred by the applicable statute of limitations. N & D contends that the applicable statute of limitations is the six-year statute found in R.C. 2305.07, which governs oral contracts. N & D further maintains that if the four-year statute of limitations found in R.C. 2305.09, governing certain torts (in particular, the recovery of personal property), was correctly applied by the trial court, then such statute did not begin to run until March 25, 1990, when the property was tendered back to N & D by the sheriff. It should be noted at this point that in its opinion, the trial court, in fact, applied the two-year statute of limitations found in R.C. 2305.10 as to N & D's claims of injury to their property. This court finds that the trial court correctly stated the statute of limitations to be applied is that found in R.C. 2305.10, which states:

"An action for bodily injury or injuring personal property shall be brought within *two years* after the cause thereof arose.  * * * "  (Emphasis added.)

In *Bauman Chevrolet, Inc. v. Faust* (C.P.1953), 66 Ohio Law Abs. 145, at 147, 113 N.E.2d 769, at 771, the court held:

"In the present case while being an action for breach of contract, the breach involved is the injury to personal property and the damages sought are damages for the injury to personal property.

"The relief sought and the damages involved would be the same if the plaintiff had commenced his action on the basis of simple negligence. Had the action been based on negligence and not on contract, it is clear that the two year limitation * * * would apply."

This opinion was relied upon in *Underwriters at Lloyd's v. Peerless Storage Co.* (S.D.Ohio 1975), 404 F.Supp. 492, 1 O.O.3d 407, where the court concluded that:

"A bailment contract does not avoid the two-year limitation of R.C. Section 2305.10 by asserting breach of contract as a cause of action where the basis of action is damage to personal property."

■ The next issue which must necessarily be addressed is when this two-year statute began to run.

R.C. 2329.53 provides that:

"The officer to whom a writ of execution is directed shall return such writ to the court to which it is returnable within sixty days from its date."

The writ of execution was issued on May 3, 1983. Therefore, when the return was not made by July 2, 1983, N & D had reason to know that the sheriff had breached any bailment contract. Other facts which would give N & D knowledge of sheriff's breach were that all of the property in question was in the Wayside Inn, to which only Guagenti had a key to the lock, and not the sheriff or N & D, and that the sheriff never actually took physical possession of any of the property. N & D should have reasonably known of any breach by the sheriff in 1983, and thus the statute of limitations would have tolled in 1985.

■ Even if the above could not be said to be enough to start the running of the statute, it still would have run under the following rationale found in 66 Ohio Jurisprudence 3d (1986), Limitations and Laches, Section 67:

"The general rule is that where demand is necessary to perfect a cause of action, the statute of limitations does not begin to run until the demand is made. In the absence of special circumstances, however, when no demand is shown to have been made within the statutory period for bringing the action, for the purpose of setting the statute in operation, a demand will be presumed at the expiration of that period, from which the statute will begin to run. Thus a party is not permitted to postpone indefinitely the time when the statute will begin to run, by failing to make a demand, unless it appears that

the parties contemplated an indefinite delay in the making of the demand or unless special circumstances exist and a cause for delay can be shown."

Accordingly, N & D's demand for return of the goods, pursuant to R.C. 2329.84 should have occurred no later than July 2, 1985. Thus, the statute of limitations would have run no later than July 2, 1987. As such, N & D is barred by the applicable statute of limitations from bringing a suit against the sheriff. Therefore, N & D's first assignment of error is not well taken.

In dealing with the first part of N & D's first assignment of error we addressed the issue raised by the second assignment of error, namely, whether the trial court erred by failing to recognize their claim as a bailment action as opposed to a conversion, wrongful execution, or injury to personal property action. Although this court does recognize a distinction between the bailment claim raised in the present action and the tortious claim raised in the previous action, we find that the trial court was correct in finding that regardless of the type of claim proffered by N & D, the damages prayed for were those of injury to personal property. As such, the two-year statute of limitations contained in R.C. 2305.10 applies. Therefore, although N & D's second assignment of error is well taken, it does not have an effect upon the final determination of the trial court.

For the reasons set forth above, the summary judgment granted by the trial court in favor of the sheriff and Guagenti is affirmed.

*Judgment affirmed.*

SHAW, J., concurs.

BRYANT, P.J., concurs separately.

THOMAS F. BRYANT, Presiding Judge, concurring.

I believe there to be a fundamental and substantive difference between a bailment and the character of a sheriff's possession of personal property seized by levy upon execution of a court order.

While the consequences of the sheriff's failure to redeliver goods wrongly seized may be the same as those to be suffered by a bailee for conversion of or failure to redeliver bailed goods, and while the standard of care to be exercised by both a sheriff and a bailee toward the goods in custody is one of ordinary care, a sheriff's intentional or negligent injury to property seized upon execution is a tort, not a breach of contract or bailment, real or imagined, express or implied.

Therefore, I do not agree that appellant's second assignment of error is well taken. I would affirm the trial court in all respects, for it was correct in holding that the nature of the claim was irrelevant in the circumstances.

However, I concur in the result reached by the majority and, accordingly, I concur in the judgment herein.